UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

LILLIAN B. LINNEN,

                    Plaintiff,

                                        Civil No. 12-6135(NLH)

        v.

                                        **OPINION**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

---

**APPEARANCES:**

LILLIAN B. LINNEN
125 CHATHAM ROAD
MOUNT LAUREL, NJ 08054
*Pro Se Plaintiff*

PETER WILLIAM JEWETT
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
26 FEDERAL PLAZA, ROOM 3904
NEW YORK, NY 10278
*Attorney for defendant*

**HILLMAN**, District Judge

        This matter comes before the Court pursuant to Section
205(g) of the Social Security Act, as amended, 42 U.S.C. §
405(g), to review the final decision of the Commissioner of the
Social Security Administration, denying Plaintiff's application
for Disability Insurance Benefits and Supplemental Security
Income ("Social Security benefits") under Title II and Title XVI
of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue

before the Court is whether the Administrative Law Judge ("ALJ")
erred in finding that there was substantial evidence that
Plaintiff did not have a disability following her alleged onset
date of disability, December 17, 2007.  For the reasons stated
below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On August 8, 2008, Plaintiff filed an application for
disability insurance benefits and for supplemental security
income.  Plaintiff filed additional applications for
supplemental security income on September 17, 2008 and October
9, 2008.  Plaintiff claims that following an accident that
occurred on December 17, 2007, in which she fell out of a school
van, she became disabled due to exacerbation of her pre-existing
degenerative joint disease (osteoarthritis), cubital tunnel
syndrome at her left elbow, left carpal tunnel syndrome, and
aggravation of her pre-existing cervical and lumbar
strain/sprain.  At the time of the accident, Plaintiff was a
full-time student at Rutgers University and was entering a
school van when the driver started to go before plaintiff was
seated.  She fell out of the van onto her knees and felt an
"electric shock" in her body.

Plaintiff's claims for benefits were denied initially on

2

October 24, 2008, and upon reconsideration on February 24, 2009.
Following a hearing on March 10, 2010, and ALJ determined in a
written Opinion dated May 3, 2010 that Plaintiff was not
disabled.  Plaintiff appealed the decision.  The Appeals Council
reviewed the ALJ's decision and upheld it on August 3, 2012,
thus rendering it as final.  Plaintiff now seeks this Court's
review.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for Disability Insurance Benefits.  Ventura v.
Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court
must uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000);
Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).
Substantial evidence means more than "a mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting
Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It
means "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." Id.  The inquiry is not

whether the reviewing court would have made the same

determination, but whether the Commissioner's conclusion was

reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th

Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.

474, 488 (1951)).

The Commissioner "must adequately explain in the record his

reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

Circuit has held that an "ALJ must review all pertinent medical

evidence and explain his conciliations and rejections." Burnett

v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

Similarly, an ALJ must also consider and weigh all of the non-

medical evidence before him.  Id. (citing Van Horn v. Schweiker,

4

717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although
an ALJ, as the fact finder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart, 94
Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial
review, a district court is not "empowered to weigh the evidence
or substitute its conclusions for those of the fact-finder."
Williams, 970 F.2d at 1182.  However, apart from the substantial
evidence inquiry, a reviewing court is entitled to satisfy
itself that the Commissioner arrived at his decision by
application of the proper legal standards.  Sykes, 228 F.3d at

5

262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983);
<u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

Finally, Plaintiff is proceeding pro se. Pro se complaints
must be construed liberally, and all reasonable latitude must be
afforded the pro se litigant. <u>Haines v. Kerner</u>, 404 U.S. 519,
520 (1972), <u>reh'g denied</u>, 405 U.S. 948 (1972). Even though pro
se complaints, "however inartfully pleaded, must be held to less
stringent standards than formal pleadings drafted by lawyers,"
<u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976), pro se litigants
"must still plead the essential elements of [their] claim and
[are] not excused from conforming to the standard rules of civil
procedure," <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993)
("[W]e have never suggested that procedural rules in ordinary
civil litigation should be interpreted so as to excuse mistakes
by those who proceed without counsel....").

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a

6

continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

> 5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

In this case, the ALJ found in his May 3, 2010 decision

that Plaintiff had not engaged in substantial gainful activity
since the alleged onset of disability (Step One).  The ALJ next
found that Plaintiff's degenerative joint disease
(osteoarthritis) in her knees was severe (Step Two).  The ALJ
then found that Plaintiff's impairment did not meet the medical
equivalence criteria (Step Three).  At Step Four, the ALJ found
that Plaintiff had the residual functional capacity (RFC) to
perform a wide range of sedentary work.  The ALJ concluded that
she could lift and carry up to 10 pounds occasionally as well as
frequently; that she could stand and walk for up to two hours in
an eight hour workday; that she could sit for up to six hours in
an eight hour workday; but that she was limited in regard to
pushing and pulling objects with her lower extremities; that she
could occasionally climb ramps or stairs, stoop, crouch, or
crawl; but that she could never climb ladders, rope, or
scaffolds or kneel; that she should avoid moderate exposure to
extremely cold temperatures and hazards; and should avoid
prolonged exposure to extreme heat, wetness, humidity,
vibration, fumes, dust, odors, gases and poor ventilation (Step
Five).

     Plaintiff's sparse complaint contains no specific
allegations nor raises any particular argument concerning

whether or how the ALJ erred in his decision-making.  Rather, Plaintiff simply alleges that she "do[es] not agree with Administrative Law Judge [] because of errors," and in support attaches a "Permanency/Polk Evaluation" letter from I. David Weisband, D.O.  Dr. Weisband's report, dated Jaunary 17, 2011, after the ALJ issued his decision, opined that Plaintiff suffered a "significant personal injury in the van accident of December 17, 2007" resulting in permanent injuries which limits her ability to participate in vocational, personal and extracurricular activities.

As noted, the evaluation by Dr. Weisband is dated January 17, 2011, well after the hearing before the ALJ on March 10, 2010 and the ALJ's May 3, 2010 decision.  As it did not exist until later, the report is not mentioned or considered in the ALJ's decision.  Plaintiff did submit the report to the Appeals Council which noted it, added it to the record, and concluded that it did not "provide a basis for changing the [ALJ's] decision." [Notice of Appeals Council Action, August 3, 2012, at p. 1-2].  Plaintiff's complaint faults the Appeals Council for "not consider[ing]" the Weisband evaluation.

The general rule is that "when [a] claimant seeks to rely on evidence that was not before the ALJ, the district court may

remand to the Commissioner but only if the evidence is new and
material and if there was good cause why it was not previously
presented to the ALJ." <u>Matthews v. Apfel</u>, 239 F.3d 589, 593 (3d
Cir. 2001)(citing <u>Keeton v. DHHS</u>, 21 F.3d 1064, 1067 (11th Cir.
1994); <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir. 1985)).[1]

---

1 "[A]lthough evidence considered by the Appeals Council is part
of the administrative record on appeal, it cannot be considered
by the District Court in making its substantial evidence review
...." <u>Matthews v. Apfel</u>, 239 F.3d 589, 593 (3d Cir. 2001).  In
<u>Matthews</u>, the Third Circuit found that the Social Security Act,
and not the regulations, govern the standards for judicial
review so that evidence that was not before the ALJ cannot be
used to argue that the ALJ's decision was not supported by
substantial evidence.  (citing <u>Jones v. Sullivan</u>, 954 F.2d
125, 128 (3d Cir. 1991)(<u>United States v. Carlo Bianchi & Co.</u>,
373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963)).  The Third
Circuit explained,

> No statutory authority (the source of the
> district court's review) authorizes the court to
> review the Appeals Council decision to deny
> review.  No statutory provision authorizes the
> district court to make a decision on the
> substantial evidence standard based on the new
> and material evidence never presented to the
> ALJ.  Instead, the Act gives the district court
> authority to remand the case to the
> Commissioner, but only if the claimant has shown
> good cause why such new and material evidence
> was not presented to the ALJ.

<u>Id.</u>  Therefore, even if new evidence was submitted to the
Appeals Council but the Appeals Council denied review, the
district court cannot consider it if it was not presented to the
ALJ.  Here, plaintiff submitted new evidence to the Appeals
Council.  The record reflects that the Appeals Council made the
report from Dr. Weisband part of the record and considered it in
denying plaintiff's request for review.  That decision is not

Since Plaintiff is proceeding pro se in this matter, her complaint will be liberally construed.  Therefore, it will be assumed that Plaintiff is asking the Court to rule that the evaluation is new evidence that is material, and is requesting that the Court remand this matter back to the ALJ to consider the opinion of Dr. Weisband.

Almost all of the reports relied upon by Dr. Weisband in his evaluation are dated 1999, 2001, 2002, 2004, and 2009, and therefore available at the time of the hearing before the ALJ on March 10, 2010.  The only reference in the evaluation that could be construed as new evidence is a reference to an October 22, 2010 x-ray report of Plaintiff's bilateral standing knees showing tricompartmental osteophyte formation with medial joint space narrowing.  Dr. Weisband notes that although there was an x-ray report from February 10, 2009 showing degenerative changes in the knees, the 2009 report was "not as severe as the October 22, 2010 x-rays."  As such, the October 22, 2010 x-ray report is not so much new as it is cumulative of the medical information already submitted to the ALJ.

---

reviewable.  Rather, the issue before this Court is whether the new evidence is material and, if so, whether plaintiff has presented good cause for not submitting it to the ALJ.

Moreover, the 2010 x-ray report only indicates that Plaintiff's degenerative joint disease in her knees worsened to some degree in 2010.  The ALJ, however, had found that the degenerative joint disease in her knees was severe.  Therefore, an additional x-ray report indicating severe degenerative joint disease is not "material" and would not cause the ALJ to reach a different conclusion.

In addition, Plaintiff has not demonstrated good cause for her failure to present Dr. Weisband's evaluation to the ALJ. See Smith v. Commissioner of Social Sec., 80 Fed.Appx. 268, 270-71 (3d Cir. 2003) (affirming decision that plaintiff did not have good cause for her failure to present new medical documents to the ALJ).  With the exception of the 2010 x-ray report all medical information in Dr. Weisband's evaluation was available to present to the ALJ.  Indeed, the ALJ did consider: Plaintiff's treatment with Laura Rutkiewicz, M.D. on January 3, 2008 (diagnosed with knee, low back and neck pain, and urinary incontinence), x-rays of her left knee on January 16, 2008 (showed no injury and moderate osteoarthritis), x-ray of her right wrist (showed no abnormal findings), an MRI of her right and left knees on April 18, 2008 (showed moderate osteoarthritis), physical therapy reports from February to April

13

2008 (intermittent pain, but able to perform basic care activities), treatment with Laura Ross, D.O. on April 22, 2008 (diagnosed with degenerative joint disease in her knees and left elbow and lateral epicondylitis pain), physical therapy at Virtua Rehabiliation in March 2009, and treatment with Stuart Dubowich, D.O. (diagnosed with advanced degenerative osteoarthritis in her bilateral knees).  There is nothing to indicate that any of the information relied upon by Dr. Weisband was not available at the time of the hearing before the ALJ.

Furthermore, Plaintiff has provided no explanation for her failure to obtain this evaluation before the hearing.  See Scatorchia v. Commissioner of Social Sec., 137 Fed.Appx. 468, 472 (3d Cir. 2005) (finding that lack of explanation for failure to acquire additional medical information prior to hearing is sufficient by itself for a determination of lack of good cause).  Therefore, Plaintiff has not provided the necessary showing of good cause to remand this matter to the ALJ.

In addition, to the extent that Plaintiff also intends to argue that the ALJ erred in his decision, the Court concludes that the ALJ's findings are properly supported by the record evidence described in the ALJ's decision.  The ALJ found that Plaintiff's statements concerning the intensity, persistence and

14

limiting effects of her symptoms were not credible and
inconsistent with the residual functional capacity assessment.
See 20 C.F.R. § 404.1529(c) (regulations provide that
allegations of pain and other subjective symptoms must be
supported by objective medical evidence); Salles v. Commissioner
of Social Sec., 229 Fed.Appx. 140, 145 (3d Cir. 2007) ("No
symptom or combination of symptoms can be the basis for a
finding of disability, no matter how genuine the individual's
complaints may appear to be, unless there are medical signs and
laboratory findings demonstrating the existence of a medically
determinable physical or mental impairment(s) that could
reasonably be expected to produce the symptoms.")(quoting SSR 96-
4p, 1996 WL 374187, at *1).

    Particularly, the ALJ noted Plaintiff testified at the
hearing that although she had pain in her knees that caused
difficulty with walking, standing, and prolonged sitting since
her accident on December 17, 2007, she was able to serve as the
primary caregiver for her great grandchildren aged 3 and 6, whom
she was raising.  Plaintiff also testified that she was unable
to bathe herself due to an inability to stand in a shower or
maneuver a tub, that she had difficulty getting in and out of
the car (but could drive), and had pain in her hips and her left

15

arm, which restricted her ability to use the bathroom.  The ALJ noted that the medical records did not reflect any complaints about hip pain and that the last treatment records regarding her left upper extremity indicated she had no pain or restrictions at all in that area.

The ALJ also noted that following the accident, Plaintiff continued as a full time student at Rutgers University and worked at an internship for up to 20 hours a week, in addition to raising her great grandchildren on her own until her daughter moved in with her in the summer of 2008.  She stated that she sometimes spent up to seven days a week at school until she graduated in May of 2008.  The ALJ further noted that after her graduation, Plaintiff continued to work as a risk management associate at her internship until August or September of 2008 with the expectation that she would be hired for a full time position at the completion of the internship.  When she was not offered a full time position after the completion of her internship, Plaintiff went on several job interviews for physically demanding positions such as a caretaker in a hospital and nursing home.  The ALJ stated that he found Plaintiff's complaints of pain and reported difficulties inconsistent with her desire and expectation that her position would continue past

16

the end of the internship and that she would work full time hours.

The ALJ gave significant weight to the medical opinion of Dr. Norman Schactel, a State agency medical consultant, who opined that Plaintiff could lift and carry up to 10 pounds occasionally and less than ten pounds frequently; could stand and walk for up to 2 hours in an 8 hour workday; could sit for up to 6 hours in an 8 hour workday; and could occasionally climb ramps or stairs, stoop, or crouch. Dr. Schactel also opined that Plaintiff was limited in pushing and pulling objects with her lower extremities, could never climb ladders, rope, or scaffolds, kneel, or crawl, and should avoid all exposure to hazards and avoid even moderate exposure to extremely cold temperatures, prolonged exposure to extreme heat, wetness, humidity, vibration, fumes, dust, odors, gases and poor ventilation.

The ALJ also gave significant weight to the medical opinion of Dr. James Paolino, another State agency medical consultant, who reviewed the medical evidence of record on February 23, 2009, and agreed with the opinion of Dr. Scachtel that Plaintiff could perform work at a sedentary exertion level. See Diaz v. Commissioner, 577 F.3d 500, 505-06 (3d Cir. 2009) (In evaluating

medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another). <u>Brownawell v. Commissioner of Social Security</u>, 554 F.3d 352, 355 (3d Cir. 2008) (an ALJ is not required to blindly follow a treating physician's conclusions).

Accordingly, the Court cannot find that the ALJ erred in his decision.

**III. CONCLUSION**

For the reasons expressed above, Plaintiff has not offered any reason to conclude that Dr. Weisband's opinion would have been material to the ALJ's decision nor offered any explanation as to why it was not submitted earlier. Moreover, on the record properly before him, the ALJ's determination that Plaintiff did not have a disability is supported by substantial evidence. Accordingly, the decision of the ALJ is affirmed. An accompanying Order will be issued.

Date: <u>March 31, 2014</u>          <u>s/Noel L. Hillman</u>
                                      NOEL L. HILLMAN, U.S.D.J.